THE UNION NATIONAL BANK OF FRANKLINVILLE, NEW YORK, Respondent, *v.* DANFORD W. DEAN, Appellant, Impleaded with SAMUEL A. SPRING, Defendant.

Fourth Department, January 8, 1913.

Partnership — evidence — parol proof of dissolution — notice of dissolution — when partner not liable upon partnership notes renewed by fellow partner after dissolution — when knowledge of dissolution question of fact — evidence — entries in books of corporation which purchased partnership business — best evidence — when secondary evidence not admissible — identification of books — Statute of Limitations — payment of interest on notes by corporation purchasing partnership business — limitation of action.

In an action against former partners upon promissory notes of the firm it is error to refuse to allow one of the partners to testify to a conversation with his copartner respecting a dissolution of the firm prior to the execution of the notes. This, because a partnership may be dissolved at any time by agreement and although the articles of partnership are in writing, a dissolution may be proved by parol.

Actual notice of the dissolution of a partnership must be given to persons who have dealt with it, but it matters not how such notice is acquired. Formal notice is not necessary.

Thus, where officers of a bank holding the notes of a partnership had knowledge that it sold its business to a corporation for whom the partners worked as employees and the bank brings action upon renewal notes of the partnership executed by one of the former partners ten years after the sale of its business, it is for the jury to say whether the bank had notice of the dissolution.

Knowledge by the officers and directors of the bank of the dissolution of the partnership is notice to the bank.

Where a bank has knowledge that a partnership is dissolved, or knowledge of such facts as would lead to belief in a dissolution, it had no right to allow either partner to renew notes given by the firm.

A former partner who became director and secretary of a corporation to which the firm sold its business is not chargeable with constructive notice of the fact that interest paid by the corporation on notes of the firm renewed after its dissolution was charged against him on the books of the corporation.

Entries in the books of a corporation must be proved by the production of the books themselves unless a foundation is laid for secondary evidence.

Books of a corporation cannot be identified by labels thereon which are not in writing, or by the fact that they contain entries against its employees.

Payment of interest upon the notes of a former partnership by a corpora-
tion which purchased the business must be shown to have been made
with the knowledge and acquiescence of a former partner in order to
remove the bar of the Statute of Limitations as to him.

APPEAL by the defendant, Danford W. Dean, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Cattaraugus on the 30th
day of September, 1910, upon the verdict of a jury, and also
from an order bearing date the 23d day of September, 1910, and
entered in said clerk's office, denying the said defendant's motion
for a new trial made upon the minutes.

The action was commenced on the 15th day of October, 1901,
by service of the summons upon the defendant Dean. The
defendant Spring not having been served and he having died
during the pendency of the action and no substitution of his
representatives having been made, the trial proceeded against
Dean practically as sole defendant, he alone having interposed
a defense. The action was brought to recover the amount of
two promissory notes, with interest, alleged to have been made
by Dean & Spring as copartners, signed by the firm name
"Dean & Spring, by S. A. Spring," made payable to R. S.
Litchfield, cashier, or order, and delivered to the Farmers'
National Bank of Franklinville, N. Y. One of such notes was
dated May 1, 1899, was for $1,475, and was made payable at
said bank six months after date, with interest. The other
note was dated June 1, 1899, was for $700, and was payable
twelve months after date at said bank, also with interest. It
is alleged and is not disputed that the name of the Farmers'
National Bank of Franklinville, N. Y., was changed to that
of the plaintiff and that it is entitled to all the rights of the
original holder and payee of said notes.

The defendant Dean by his answer denies, in substance, that
at the times when the notes in question were executed and
delivered the firm of Dean & Spring was in existence, or that
Spring had any authority to bind the defendant Dean by sign-
ing to the notes in question the name of Dean & Spring, and,
in substance, that the copartnership of Dean & Spring had
been dissolved to the knowledge of the plaintiff before it
obtained and discounted the notes in question.

The defendant Dean also interposed the defense of the Statute of Limitations.

*William W. Waring,* for the appellant.

*George E. Spring,* for the respondent.

McLENNAN, P. J.:

In the year 1882 the defendants, Danford W. Dean and S. Arthur Spring, formed a copartnership, under the name of Dean & Spring, for the purpose of conducting a lumber yard and planing mill at Franklinville, N. Y., and engaging in the business of contracting and building there and elsewhere. Dean attended to the operation of the mill and looking after outside contracts, which took him away from Franklinville a considerable portion of the time during the building season. Spring had charge of the office, kept the books and looked after the financial affairs of the copartnership. They commenced to do business as copartners with the Farmers' National Bank soon after it started in business.

In about the month of September, 1888, Dean & Spring sold out their entire business and plant to the Dean & Spring Manufacturing Company, a corporation organized for the purpose of taking over such business and plant. The copartnership retained only a few contracts in the course of completion and the outstanding book accounts. The copartnership owed some debts, and Spring had charge of collecting the money due the partnership and applying it on the debts. The unfinished contracts were all completed during or before the month of December, 1888, practically ten years before the notes in suit were executed and delivered.

Evidence was given on the part of the plaintiff to show that these notes were originally given by the partnership to the bank and were unpaid at the time of the sale of the partnership business to the corporation and were thereafter renewed from time to time by Spring, who assumed to sign the name of Dean & Spring to such renewals, the notes in suit being the last of such renewals. Plaintiff also gave evidence that when the notes became due from time to time from 1888 to 1899, the interest was charged on the books of the bank to the Dean & Spring Manufacturing Company and vouchers therefor mailed to that

corporation, and that on the books of the Dean & Spring Manufacturing Company one-half of such interest was charged to the account of Dean and the other one-half to Spring; that both Dean and Spring were employed by the corporation at a monthly salary and an individual account with each of them as to such salary, interest and other matters was kept on the books of the corporation.

No notice of the dissolution of the copartnership was ever published in any newspaper nor is there any claim made that notice in writing was ever given to the bank of such dissolution. That Dean frequently was in the bank from all the time from 1888 down to 1900 is conceded and he testifies that he never knew of the giving of the notes by Spring in the firm name until about 1893, when he had a talk with Adams, the cashier of the bank, who stated that he had a Dean & Spring note which he wanted Dean to sign; that he told the cashier that he did not know anything about any such note and would not sign it; that the cashier then asked him if he wanted him to sue him and he said he did; that if he had any such note that was just what he wanted, and further told the cashier that he must not take any more notes with his name on them unless he knew about them or something to that effect; that he never received notice of protest of such notes at any time and knew nothing further about them until after Spring left Franklinville, when he was again asked by the then cashier of the bank to sign such notes and again refused. Dean does not claim to have personally given the bank any other notice of dissolution than as above stated.

It appears by the evidence that A. P. Adams, the cashier of the bank, knew that the firm of Dean & Spring had sold out their business to the Dean & Spring Manufacturing Company at the time it was done. N. F. Weed, a director of the bank, was one of the stockholders in the Dean & Spring Manufacturing Company. The same is true of A. O. Holmes and also of Alfred Spring. Adams was a stockholder in the Dean & Spring Manufacturing Company. R. S. Litchfield, cashier of the bank from February, 1894, to April, 1904, knew that the firm sold out to the corporation and that Mr. Dean and Mr. Spring were thereafter employed by the corporation and that

the whole time of each was taken up by such employment. Litchfield testifies that he had no knowledge that they were engaged in transacting any business on their own account as a copartnership during any of the time from 1890 down to 1899.

Upon the trial the defendant Dean testified that at the time of the sale of the business of the partnership to the corporation he had a talk with his partner, Mr. Spring, upon the subject of the dissolution of the partnership, but was not allowed to state the conversation, the court holding that unless the partners were connected with the bank or unless the conversation was shown to have been brought home to the bank, it could not be received in evidence. In this ruling we think the court was in error. The partnership relation is in the nature of a contract relation, and may be dissolved at any time by agreement, and even though the partnership agreement be in writing, the dissolution may be proved by parol. (*Emerson* v. *Parsons*, 46 N. Y. 560.) Unless an actual dissolution of the partnership was made the bank would be entitled to recover on the notes in question, even though the bank might have believed that there had been a dissolution prior to the inception of the notes. So that we think the court should have received the parol evidence of dissolution in order that the jury might consider it in connection with all the other facts in determining whether the partnership had been dissolved before the notes in suit were made.

We are also of the opinion that the court should have permitted the jury to pass upon the question of whether or not the bank had notice of the dissolution of the partnership if they found that a dissolution had been made. As to parties who have never previously dealt with a copartnership, constructive notice of the dissolution seems to be sufficient; but as to those who have had dealings with the partnership actual notice must be given, and it matters not how the notice may be acquired. Knowledge of the fact is sufficient notice in whatever manner the knowledge may have been acquired, and no formal notice in such case need be served. Likewise knowledge of facts which would lead a party to believe that the partnership has been dissolved is sufficient. (*Austin* v. *Holland*, 69 N. Y. 571.) The undisputed facts in the record tend strongly to show that the partnership had been dissolved. The sale of the business and good

will of the firm to the corporation, the cessation of all business activity for many years, the devoting of the entire time of the partners to the work of the corporation upon a salary basis, would seem to point rather to a dissolution of the partnership than to its continuance. It is elementary that if the partnership had been dissolved and the bank had knowledge of such fact, or knowledge of such facts as would lead it to believe that the partnership had been dissolved, neither of the partners had the right to bind the other by the making of any new notes or the creation of other obligations in the firm name. If the jury found that sufficient notice of a dissolution came to the knowledge of the officers and directors of the bank above named, that would constitute notice to the bank.

The plaintiff was allowed to prove certain entries in books alleged to have been kept by the Dean & Spring Manufacturing Company, whereby the personal accounts of Mr. Dean and Mr. Spring were charged with each one-half of the interest upon the notes of which the notes in suit are renewals, without showing that the defendant Dean had knowledge of the fact that such charges had been made. While Dean was a director and the secretary of the corporation he was not chargeable with constructive notice of what appeared upon such accounts, and the entries themselves were no more competent against him than against a stranger to the corporation. (*Rudd* v *Robinson,* 126 N. Y. 113.) The books themselves were not produced, and no sufficient foundation was laid for the introduction of secondary evidence regarding them in any event. They were shown to have been in the possession of the plaintiff subsequent to the commencement of this action, and no sufficient reason was shown why they could not have been produced upon the trial. The witness Scott was permitted to testify that in 1901 at the bank he examined books purporting to be the books of the Dean & Spring Manufacturing Company although he had never seen them before. He identified them by a label on the books, and by the fact that they contained entries against Mr. Dean and Mr. Spring. This was wholly insufficient to identify the books as the books of the Dean & Spring Manufacturing Company. A label is of little value in determining the nature of a book of accounts, unless perchance the label be

in the handwriting or made at the direction of the person sought to be charged thereby. All of such proof was given over the objection and exception of the defendant Dean, and we think the court erred in admitting such evidence. As above pointed out, the entries in and of themselves were not sufficient to establish constructive notice against Dean, and if upon a new trial it should be sought to show actual notice of such entries, the books themselves should be properly proven as such, and secondary evidence of their contents should not be received unless a proper foundation be first laid therefor. Payments of principal or interest by the defendant Dean upon the indebtedness represented by the notes in suit, such as to remove the bar of the Statute of Limitations, must, in order to bind Dean, have been made with his knowledge and acquiescence.

For these reasons the judgment and order appealed from must be reversed and a new trial granted, with costs to the appellant to abide event.

All concurred.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.